## STATE OF MAINE

### *vs.*

## INTOXICATING LIQUORS AND LAWRENCE PEMBROKE, Claimant.

## Oxford.    Opinion July 10, 1906.

*Intoxicating Liquors. Seizure of Same While in Transit Between States. Inter-state Commerce. Constitutional Law. Transit Ends, When. C. O. D. Pack-age. Duty of Common Carrier to Deliver at Destination. Constitution of U. S., Art. I, Sect. VIII, Clause 3. U. S. Statute 1890, c. 728. R. S., 1883, c. 27, § 31. R. S., c. 29, § 39.*

Certain consignors entered into a contract with an express company for the transportation of a box of intoxicating liquors from Covington, Kentucky, to No. 4 Byron street, Rumford Falls, Maine. It was a C. O. D. shipment, and it was the unquestioned duty of the express company either to make a personal delivery of the package to the consignee, or to leave it at his residence or place of business designated as No. 4 Byron Street. The liquors were intended for unlawful sale in Maine. While these liquors were in the office of the express company at Rumford Falls, they were seized by a deputy sheriff by virtue of a search and seizure warrant duly issued by a court of competent jurisdiction and taken away.

*Held:* that the transportation of the liquor from the office of the express company at Rumford Falls to No. 4 Byron Street, was a part of a continuous interstate shipment from Kentucky to the street and number designated at Rumford Falls, and the package was protected from the operation of the laws of Maine until the act of transportation was consummated by the delivery of the package at its place of ultimate destination in this state. The seizure was made before the transportation was terminated and was an interruption of an interstate shipment. It was therefore premature and unauthorized.

While intoxicating liquor continues to be recognized by federal authority as a legitimate subject of interstate commerce, section 31 of chapter 29 of the Revised Statutes of 1883 as amended in section 39 of chapter 29 of the Revised Statutes of 1903, so far as it applies to interstate commerce transportation, must be deemed incompatible with the interstate commerce clause of the Federal Constitution.

On report. Judgment for claimant.

Search and seizure process under the provisions of section 49 of chapter 29 of the Revised Statutes, begun in the Rumford Falls Municipal Court, Oxford County. The complaint, omitting the formal parts, was as follows:

"Harris L. Elliot, of Rumford, in the County of Oxford, competent to be a witness in civil suits, on the 23rd day of January A. D. 1904, in behalf of said state, on oath complains that he believes that on the 23rd day of January, in said year at said Rumford intoxicating liquors were, and still are kept and deposited by Lawrence Pembroke, of Rumford, in said County, in a box marked Lawrence Pembroke, Rumford Falls, Me.,—C. O. D. $15, now in the American Express Office and its appurtenances, situated in said Rumford, the said Pembroke not being then and there authorized by law to sell intoxicating liquors within said state, and that said liquors then and there were and now are intended for sale by the said Pembroke within said state in violation of law, against the peace of said state, and contrary to the form of the statute in such case made and provided.

"Wherefore, the said complainant prays, that due process be issued to search the premises and the person herein-before mentioned, where said intoxicating liquors are believed to be deposited, and if there found, that said liquors and vessels be seized and safely kept until final action and decision be had thereon, and that the said Pembroke

be forthwith apprehended and held to answer to this complaint and to do and receive such sentence as may be awarded against him.

Upon this complaint a search and seizure warrant of the same date as the complaint was issued by said court and placed in the hands of the complainant who was a deputy sheriff, for service. By virtue of this warrant, the deputy sheriff, on the same day, searched the American Express office at Rumford Falls, "and there found and seized the following described intoxicating liquors, to wit: One box marked Lawrence Pembroke, Rumford Falls, Me., C. O. D. $15, containing 20 quart bottles full of whiskey" and "five half pint bottles full of whiskey."

Under the provisions of section 50 of chapter 49 of the Revised Statutes, the officer then filed a libel against these liquors and the vessels in which they were contained, in the aforesaid court, and a time for a hearing thereon was fixed by said court and notice thereof given as provided by the aforesaid section 50.

On the return day of the libel, the consignee, Lawrence Pembroke, filed in said court a claim for these liquors in accordance with the provisions of section 51 of chapter 49 of the Revised Statutes, alleging "that they were not so kept and deposited for unlawful sale as alleged in the libel." Thereupon a hearing was had and the judge of said court found that the liquors were intended for illegal sale and were liable to seizure and accordingly condemned the same and ordered them to "be turned over to the sheriff of Oxford County, they being found to contain more than twenty per cent of alcohol."

From this judgment condemning these liquors the claimant appealed to the Supreme Judicial Court to be held at Paris on the second Tuesday of March, 1904. At said March term of the Supreme Judicial Court an agreed statement of facts was filed and the case was then reported to the Law Court for decision.

The agreed statement of facts fully appears in the opinion.

*Ellery C. Park,* County Attorney, for the state.

*Bisbee & Parker,* for claimant.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J.  This case comes to the Law Court upon the following agreed statement of facts:

"On January 23rd, 1904, one box of intoxicating liquors consigned, C. O. D. express prepaid, by Crigler & Crigler, Covington Kentucky to Lawrence Pembroke, 4 Byron Street, Rumford Falls, Maine, was seized from the office of the American Express Company at Rumford Falls by H. L. Elliott, a deputy sheriff for Oxford County, and the liquors were thereafter duly libelled.

"Pembroke filed a claim for the liquors at the return day of the libel, but upon the facts then presented the judge of the Rumford Falls Municipal Court found that the liquors were intended for illegal sale and were liable to seizure and the same were condemned, from which judgment the claimant appealed to the Supreme Judicial Court.

"It is agreed for the purpose of this case that the liquors were intended for illegal sale within this state by the consignee.  It is further agreed that the box of liquors arrived at Rumford Falls on the 11.35 A. M. train January 23rd, 1904, and were immediately taken by the express company to its office at Rumford Falls, and were there seized by a deputy sheriff for Oxford County, about 1.30 P. M. on the same day.

"It was the custom of the express company at Rumford Falls to deliver express packages at the residence of the consignee, provided his address was given or he was known to the express company and lived within the limits of Rumford Falls village.  4 Byron Street is within the limits of the village.

"Most of the express was not delivered until after the afternoon train went out at 2.40 P. M., and this box was intended to be delivered at that time.

"If upon the foregoing statement the Law Court decides that the liquors were liable to seizure and condemnation, the judgment of the lower court shall be affirmed, otherwise judgment is to be rendered for the claimant and the liquor ordered returned."

It sufficiently appears from the foregoing statement of facts that

pursuant to an order from the claimant, the consignors entered into a contract with the express company for the transportation of the box of liquors in question from Covington Kentucky to number 4 Byron Street, Rumford Falls, Maine. It was the unquestioned duty of the express company either to make a personal delivery of the package to Lawrence Pembroke, or to leave it at his residence or place of business designated as No. 4 Byron Street.

The custom generally prevailing in the early history of common carriers, of depositing in a warehouse at the place of destination, all packages transported by them, either with or without notice to the consignee of such deposit, proved to be inadequate to meet the public demand for greater safety and dispatch in the transportation and delivery of valuable parcels. Hence arose the necessity for improved methods involving an obligation on the part of the carrier to make delivery of such parcels to the consignee in person. "This necessity was supplied by what are known in this country as express companies, which undertake to carry goods of this class and to make a personal delivery of them to the consignee; and to this public profession they are held by the law with great strictness." Hutchinson on Carriers, section 379, and authorities cited. In *Packard* v. *Earle et al.* 113 Mass. 280, the defendants were express carriers over the line of the Boston & Providence Railroad from Providence to Boston, and in that capacity, received the plaintiff's trunk for transportation, marked, "Henry M. Packard, West Mansfield." In accordance with the uniform course of business of the defendants at that station, the trunk was delivered to the station agent at that place. It was deposited with him in the morning and notice of its arrival given to the plaintiff in the afternoon; but before he had an opportunity to remove it, the station was forcibly entered and the trunk stolen. Although in that instance the place of delivery was not designated by street and number, the defendants were held liable for the loss of the trunk. In the opinion the court say: "It was the duty of the defendants, as common carriers, to deliver the trunk to the plaintiff personally, or at his residence at West Mansfield, and until such delivery their liability as carriers continued. See also *Sullivan* v. *Thompson et als.*, 99 Mass. 258; Am. & Eng. Enc. of Law, Vol. 12,

p. 550; and Cyc. of Law and Proc. Vol. 6, p. 466. But it should be unnecessary to cite authorities in support of a proposition so obvious and elementary.

Furthermore the package in this case appears to have been sent C. O. D. It would consequently have been impracticable, under ordinary circumstances, for the express company to perform the obligation thus assumed to collect the purchase price for the consignors without personal delivery to the consignee, or to his authorized agent at the place designated in the way-bill. The package arrived at Rumford Falls, on the 11.35 A. M. train and was immediately taken by the express company to its office at that place. The company was ready and willing to complete the transportation by delivering the box at No. 4 Byron Street on the arrival of the 2.40 P. M. train, according to its usual course of business. The express charges had been paid for a continuous shipment over the entire line from Covington Kentucky to the residence of the consignee at No. 4 Byron Street, Rumford Falls, Maine, and the express company in fact intended to deliver the box at the street and number designated, according to its established custom, on the arrival of the afternoon train, but was prevented from so doing by the seizure of the package made at the express office within an hour and a half after its arrival there.

The method of transmission was not specified except that the package was to be forwarded by express, and it is obviously immaterial that the means of transportation to be employed in making the delivery at either terminal point may have been by wagons or drays in lieu of railroad cars. The consignee was entitled to have his package delivered at No. 4 Byron Street, and the company had a right to select the means of transportation and to make the delivery in accordance with its established usage. And it is common knowledge that the time intervening between the actual arrival of the package at the office of the company and the usual time when it was intended to be delivered, was no greater than the delay ordinarily incident to the delivery of express matter in the usual course of business in similar places.

The conclusion is therefore irresistible that the transportation in this case had not been terminated and that the seizure of the liquor

in question was made while the package was in transit and before its delivery to the consignee according to the express terms of the shipment.

It is accordingly contended in behalf of the claimant that the seizure of the package under the circumstances stated was clearly in violation of the third clause of section eight of the first article of the Constitution of the United States, conferring upon Congress the power "to regulate commerce with foreign nations and among the several states."

In *State* v. *Intox. Liquors, Grand Trunk Ry. Claimant,* 94 Maine, 335, the liquor was taken from the car of the railway company while it was standing on the siding at Auburn before it had reached its destination in Lewiston. It was sought to justify the seizure thus made while the liquor was in transit and before its delivery to the consignee, by virtue of the provisions of chapter 728 of the act of Congress of August 8, 1890, known as the Wilson Act, and by that clause of section 31 of chapter 27 of the Revised Statutes of Maine of 1883 which declares that "No person shall knowingly bring into the state or knowingly transport from place to place in the state, any intoxicating liquors with intent to sell the same in the state in violation of law," and that "all such liquors . . . . may be seized in transit." But the construction of the Wilson Act was brought directly in question in the case of *Rhodes* v. *Iowa,* 170 U. S. 412, and it is declared in the majority opinion that "interpreting the statute by the light of all its provisions, it was not intended to, and did not cause the power of the state to attach to an interstate commerce shipment whilst the merchandise was in transit under such shipment and until its arrival at the point of destination and delivery there to the consignee." In the same opinion, in commenting upon *Bowman* v. *Chicago & N. Railway,* 125 U. S. 465, the court further say: "It was decided that the transportation of merchandise from one state into and across another was interstate commerce, and was protected from the operation of state laws from the moment of shipment whilst in transit and up to the ending of the journey by the delivery of the goods to the consignee at the place to which they were consigned." It is true that the distinction between the deposit of the package in a

warehouse to await the action of the consignee, and the actual delivery of it to the consignee in person, or the difference between a shipment by freight and a shipment by express was not brought directly in question and was not necessarily involved in the decision of either *Bowman* v. *Railway,* 125 U. S. or *Rhodes* v. *Iowa,* 170 U. S., supra; but as pointed out by this court in *State* v. *Intoxicating Liquors,* 95 Maine, 140, it was distinctly held in *Rhodes* v. *Iowa,* that the moving of the package in question in that case from the platform to the freight house was a part of interstate commerce shipment, and that the transportation was not completed until the package had been moved to and deposited within the freight house. *Rhodes* v. *Iowa* has accordingly been recognized as authority for the doctrine that a package thus shipped from one state into and across another, was protected by the interstate commerce clause of the constitution until the act of shipment was completed according to the terms of the contract of transportation between the parties.

It was accordingly held by this court in *State* v. *Intox. Liquors,* Grand Trunk Ry., Claimant, 94 Maine, supra, upon the authority of *Rhodes* v. *Iowa,* that section 31 of chapter 27 of the Revised Statutes of Maine 1883, declaring that "No person shall knowingly bring into the State . . . . any intoxicating liquors with intent to sell the same in the state in violation of law," must be deemed repugnant to the interstate commerce clause of the Federal Constitution, and that the seizure in that case was made while the liquor continued to be an interstate shipment before the transportation of it had terminated and before it had become subject to the operation of the law of this state.

The facts in the case at bar are essentially different from those in *State* v. *Intox. Liquors,* 95 Maine, 140, and the cases are clearly distinguishable. In that case the liquors were shipped from Boston, Mass., by railroad lines to Machias, Maine, consigned to the shippers. They arrived at 9 o'clock in the morning and were deposited in the railroad company's freight house, where they were seized at 4 o'clock P. M. the next day. " The transportation had been completed," said the court. " Nothing further remained to be done by the railroad company. The liquors had arrived at their final place of

destination. They were not again to be removed by the railroad company. The continuity of transportation from the place of shipment to the place of consignment had not been interrupted, and the liquor had been moved to the place provided by the carrier for the purpose to await the action of the shipper."

"It is true, that no notice had been given of their arrival; there was nobody there to whom notice could have been given."

But in *American Express Co.* v. *Iowa,* 196, U. S., 133, the question of a shipment by express C. O. D., was necessarily involved and directly determined. In that case the plaintiff received four packages of intoxicating liquor at Rock Island, Illinois, to be carried to Tama, Iowa, and there delivered to four different persons, one of the packages being consigned to each. The shipment was C. O. D., three dollars to be collected for the price of each package and thirty-five cents additional for the express charges on each. Upon the arrival of the packages at Tama they were seized in the hands of the express agent by virtue of an information charging that they contained intoxicating liquors intended for unlawful sale. Without passing upon the question whether the property in a C. O. D. shipment is at the risk of the buyer or seller, and without deciding when the sale is completed, the Federal Court held that the packages in question, received by an express company in Illinois to be carried to the State of Iowa and there delivered to the consignees C. O. D. for the price of the package and the expressage, were interstate commerce, under the protection of the commerce clause of the Federal Constitution, and that prior to their actual delivery to the consignees, they could not be confiscated under the prohibitory liquor laws of Iowa.

In the case at bar the transportation of the liquor in question from the office of the express company at Rumford Falls to No. 4 Byron Street, was a part of a continuous interstate shipment from Kentucky to the street and number designated at Rumford Falls, and the package was protected from the operation of the laws of Maine until the act of transportation was consummated by the delivery of the package at its place of ultimate destination in this state. The seizure was made before the transportation was terminated, and was an interruption of an interstate shipment. It was therefore premature and unauthorized.

While therefore intoxicating liquor continues to be recognized by federal authority as a legitimate subject of interstate commerce, section 31 of chapter 27 of the Revised Statutes of 1883 above quoted, as amended in section 39 of chapter 29 of the Revised Statutes of 1903, so far as it applies to interstate commerce transportation, must still be deemed incompatible with the interstate commerce clause of the Federal Constitution.

The entry must therefore be,

> *Judgment for the claimant.*
> *Order for a return of the liquors to issue.*